**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., | Case No.: 11-CV-01043-LHK |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL |
| v. | |
| INNOVATIVE TECHNOLOGY DISTRIBUTORS, LLC, | (re: dkt. #38) |
| Defendant. | |

This case involves a multi-million dollar contract disputed between Plaintiff Oracle America, Inc. ("Oracle") and Defendant Innovative Technology Distributors, LLC ("ITD"). Presently before the Court is Oracle's motion to disqualify counsel. *See* Dkt. #38. Pursuant to Civil Local Rule 7-1(b), the Court deems this motion appropriate for resolution without oral argument and vacates the July 21, 2011 motion hearing. The July 21, 2011 case management conference, however, remains as set. For the reasons explained below, Oracle's motion to disqualify counsel is DENIED.

**I.    Background**

**A. The Parties**

Oracle is a Delaware corporation with its principal place of business in Redwood Shores, California. It is the successor in interest to Sun Microsystems, Inc. ("Sun"). ITD is a New Jersey

1

Case No.: 11-cv-01043-LHK
ORDER DENYING MOTION TO DISQUALIFY COUNSEL

limited liability company with its principal place of business in Edison, New Jersey. Aside from the contract dispute, Oracle has moved to disqualify certain counsel associated with ITD. Some background on the prior business relationship between the parties is necessary to provide context for the present motion before the Court.

Since its inception, ITD has been a reseller of hardware and software products for Sun, and later Oracle. *See* Decl. of Linda Spinella ¶ 2. The formal legal relationship between the two companies goes back to 2005, when ITD signed a General Terms agreement and supplemental agreements with Sun ("Sun-ITD Agreement"). As a result of the Sun-ITD Agreement, ITD became a distributor of Sun's products to customers in the telecommunications industry. *Id.* ¶ 9. Over the next several years, ITD and Sun modified their rights and responsibilities with several follow-on agreements, including executing "Amendment No. 1" to the Sun-ITD Agreement in September 2009. *Id.*

ITD continued to act as a reseller of Oracle products when Oracle acquired Sun in January 2010. Oracle Compl. ¶ 10. However, during the second half of 2010 and due to reasons that are a matter of dispute, the parties' relationship soured. On March 1, 2011, the parties' senior executives and legal counsel met in person to try to resolve their differences, *id.* at ¶ 13, but the meeting was not successful. On March 2, ITD filed a complaint in New Jersey Superior Court ("ITD New Jersey Complaint")—since removed to the Federal District of New Jersey and then transferred to this Court and related to this action. ITD seeks damages against Oracle for breach of contract, violation of the New Jersey Franchise Practices Act, and other claims. According to Oracle's Complaint, the contract dispute arises from ITD's failure to pay for $19 million of product that Oracle supplied to ITD under contract, beginning around July 2010. Oracle Compl. ¶ 1.

### B. Motion to Disqualify ITD Counsel

Oracle's motion to disqualify alleges that Vicky Dal Molin, a former in-house lawyer at Sun and then Oracle, should be disqualified for breaching her ethical duties by representing ITD in this litigation. Oracle also alleges that ITD's long-time outside counsel, Lowenstein Sandler, PC ("Lowenstein") should be disqualified because it "partnered" with Dal Molin.

2

### 1. Vicky Dal Molin's Employment at Sun

Dal Molin's employment with Sun began in March 2001 in Australia. Decl. of Vicky Dal Molin ¶ 5. In July 2005, Dal Molin moved to New York to become Senior Counsel for Sun's Financial Services Area. *Id*. at ¶ 6. In April 2006, she became the Assistant General Counsel for Sun's Channels Organization, making her "responsible for a variety of contract and compliance issues" involving "thousands of resellers," including ITD. *Id*. at ¶ 8. In July 2008, Dal Molin became Assistant General Counsel for Sun's Global Partners and Sales Group. *Id.* at ¶ 9.

Dal Molin worked on several ITD-related matters on behalf of Sun. Dal Molin recalls that she first became involved with a "substantive matter dealing with ITD in or around the Summer of 2009." *Id.* at ¶ 11. The business executives in the Global Partners and Sales Group wanted to create an addendum to the Sun-ITD Agreement. *Id*. Dal Molin attended meetings between ITD and Sun in New York on July 14, 2009 and in Boston in September 2009. In preparation for these meetings, Dal Molin "review[ed] the proposed terms for the contract addendum that the Sun business representatives had put together, and assisted in finalizing those terms and preparing the addendum for execution." *Id*. The timing of the September 2009 meeting and execution of the "addendum" coincide with the September 2009 execution of Amendment No. 1 to the Sun-ITD agreement.

Dal Molin also recalls working for Sun on a matter that both parties refer to as the Motorola "last time buy" issue. According to ITD, in 2008, ITD purchased $11.3 million worth of Sun products scheduled to be phased out, based on Sun's forecast that Motorola was planning to buy these products and a promise from Sun to accept the return of the products if Motorola did not follow through. *See* Friedman Decl. Exh. A ¶¶ 116-120. But, Motorola only purchased about half of these products from ITD, leaving ITD with $6 million worth of inventory it could not sell. *Id.* at ¶ 121. Dal Molin became involved with this issue in August 2009, when ITD requested that Sun accept the return of the products. Dal Molin Decl. ¶ 12. Specifically, Dal Molin provided comments on a draft e-mail to be sent from Sun to ITD, raising "queries/issues" related to the potential agreement in response to Oracle personnel's request for legal input.

3

Case No.: 11-cv-01043-LHK
ORDER DENYING MOTION TO DISQUALIFY COUNSEL

Dal Molin continued in her role at Sun until early February 2010—one month after Oracle's acquisition of Sun—when she accepted an offer from Vincent James Spinella of ITD to become ITD's General Counsel. *Id.* ¶¶ 14-16. Prior to leaving Oracle, Dal Molin completed a form "setting forth the basic terms of Sun's contracts with ITD." *Id.* at ¶ 13. The document shows that Dal Molin reviewed the Sun-ITD agreement at issue in the underlying contract dispute in this action and "flagged" certain contract terms for review by Oracle.

### 2. Lowenstein

Lowenstein has been ITD's primary outside counsel since 2005. L. Spinella Decl. ¶ 3. The firm has handled "virtually all" of ITD's legal work, "including all of ITD's transactional, intellectual property, and litigation matters," with the sole exception of ITD's local counsel for this lawsuit. *Id.* at ¶¶ 3-4. In connection with this dispute, Lowenstein has reviewed thousands of pages of documents, held numerous meetings with ITD executives, researched legal issues and prepared ITD's 42-page complaint against Oracle. *Id.* at ¶ 5. ITD believes it would be "severely prejudiced" if Lowenstein was disqualified from representing ITD in this matter. *Id.* at ¶ 7.

### 3. The March 1, 2011 Meeting

On March 1, 2011, Dal Molin attended an "executive level" meeting between the parties in New York. Dal Molin Decl. ¶ 25. ITD was represented at the meeting by Vincent James Spinella, Brian Conway and Dal Molin, along with its outside counsel from Lowenstein, Jason Halper and Michael Hahn. *Id.* Oracle was represented by Jeffrey Ross, Managing Counsel of Oracle's Litigation Group, Robert Friedman, its outside counsel, and Alison Derbewick-Miller, an Oracle Vice President. *Id.* Bhaskar Gorti, another Oracle executive, participated by phone. *Id.* On February 3, 2011, Ross contacted Dal Molin to discuss helping their clients obtain a "beneficial resolution" to the contract disputes. Dal Molin Decl. ¶ 23. At that time, however, Ross did not know the extent of Dal Molin's prior role in ITD matters as an attorney for Sun. Ross Decl. ¶ 3.

At the beginning of the meeting, Friedman asked for a private discussion outside the conference room with the Lowenstein attorneys. *See* Halper Decl. ¶ 14. Friedman voiced Oracle's objection to Dal Molin's presence believing she might have had a conflict of interest and asked that

4

Case No.: 11-cv-01043-LHK
ORDER DENYING MOTION TO DISQUALIFY COUNSEL

she be excused. *Id.*; Friedman Decl. ¶ 5. The Lowenstein attorneys refused to exclude Dal Molin from the settlement meeting, but said they would look into the potential conflict issue after the meeting. Halper Decl. ¶ 15. Dal Molin did not speak at the roughly two-hour meeting, and represents that she had no other involvement in the disputes between ITD and Oracle. Dal Molin Decl. ¶¶ 23, 27.

#### 4. Aftermath

In the weeks after the meeting, Friedman (on behalf of Oracle) and Halper (on behalf of ITD) exchanged a series of letters. The first letter from Friedman, dated March 7, reiterated Oracle's objections to Dal Molin's "clear conflict and breach of ethical rules" and suggested that Lowenstein had been "tainted" by Dal Molin's involvement. *See* Friedman Decl., Exh. B. In a letter dated March 9, Halper disputed Oracle's claims that Dal Molin had a conflict of interest and that Lowenstein Sandler was obligated to resign. Friedman Decl., Exh. C. Halper's March 9, 2011 letter further noted that Dal Molin had "officially resigned from ITD" to take a position at HDlogix, Inc. and thus "will have absolutely no involvement in the pending litigation." The two companies, however, are apparently run by husband and wife. Linda Spinella is the President and majority shareholder of ITD. V. Spinella Decl. ¶ 3. Her husband, Vincent James Spinella, is the CEO and a minority shareholder of HDlogix. *Id.* at ¶¶ 1, 3. In her sworn declaration, Dal Molin states that she has "never disclosed any confidential information or attorney-client privileged information" and that, other than the declaration, she has had "absolutely no involvement in the litigation between ITD and Oracle in any manner." Dal Molin Decl. ¶¶ 28-31.

### II. Legal Standards

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *See Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Under Civ. L.R. 11-4(a)(1), all attorneys who practice in this Court must comply with the standards of professional conduct required of members of the State Bar of California. This Court, therefore, applies state law in determining matters of disqualification. *See*

*In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).[1]  California courts recognize that "[m]otions to disqualify counsel present competing policy considerations.  On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court . . . .  On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement." *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 300 (Cal. App. 1st 1989) (citations omitted).

Because of their susceptibility to tactical abuse, "[m]otions to disqualify counsel are strongly disfavored." *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); s*ee also Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).  Therefore, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Id.* (quotation and quotation marks omitted).

### III. Analysis

In considering whether to disqualify Dal Molin or Lowenstein, the Court is guided by the overarching principle that "the business of the court is to dispose of litigation and not to oversee the ethics of those that practice before it unless the behavior taints the trial." *See Continental Ins. Co. v. Superior Court,* 32 Cal. App. 4th 94, 111 n.5 (Cal. App. 2d Dist. 1995).

#### A. Whether Vicky Dal Molin Must be Disqualified?

Oracle argues that Dal Molin must be disqualified because she violated her ethical duties to Oracle.  Specifically, Oracle alleges that Dal Molin represented Oracle on issues substantially related to this litigation, "including the very contracts, transactions and issues identified in ITD's complaint." *See* Pl.'s Mot. to Disqualify Counsel at 8.  ITD responds that Oracle's motion, at least in so far as it targets Dal Molin, is moot because Dal Molin has never been an attorney of record in

---

[1] ITD contends that New Jersey law is relevant because Lowenstein and ITD are both located in New Jersey and all the actions that Oracle complains of, including ITD's filing of the complaint in New Jersey Superior Court, occurred in New Jersey. *See* Def.'s Opp'n at 22. However, for purposes of ruling on the motion to disqualify, the Court can discern no material difference between California and New Jersey standards of attorney ethical conduct.

6

Case No.: 11-cv-01043-LHK
ORDER DENYING MOTION TO DISQUALIFY COUNSEL

this case, has not participated in this case, and, in any event, has accepted employment at another company, HDlogix, since litigation began. *See* Def.'s Opp'n to Mot. to Disqualify Counsel at 13.

That lawyers have ethical duties to their former clients arising out of the fiduciary nature of the attorney-client relationship is a principle long recognized by California courts. *See Elan Transdermal Ltd. v. Cygnus Therapeutic Systems*, 809 F.Supp. 1383, 1387 (N.D.Cal. 1992). One such ethical precept is that an attorney shall not use confidences obtained from a former client to injure its interests. *See People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 155, 172 (1981). As stated in Rule 3–310(E) of the Rules of Professional Conduct of the State Bar of California, "a member shall not, without the informed written consent of the client or former client, accept employment adverse to a client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."[2]

Based on the declarations and exhibits submitted by both parties, it appears that Dal Molin did work on at least two issues substantially related to this litigation while at Oracle. First, Dal Molin analyzed and provided legal approval for an Oracle employee's e-mail related to the Motorola "last-time buy" issue. *See* Pl.'s Reply at 8; Decl. of Robert Friedman, Exh. A at 29-31. Second, in 2009, Dal Molin also attended meetings and helped to finalize Amendment 1 to the General Terms and Purchasing Agreement between ITD and Sun. *See* Pl.'s Reply at 8. This amendment is mentioned on page seven of ITD's Complaint and is invoked in ITD's Breach of Contract claim. Moreover, Dal Molin acknowledges that she "assisted in finalizing [] terms" on an addendum to the Sun-ITD contract and "provid[ed] comments on a draft e-mail" related to the "last-time buy" issue. *See* Dal Molin Decl. ¶¶ 11, 13. In sum, serious ethical issues would be raised *if* Dal Molin were representing ITD or participating in this litigation on ITD's behalf given her prior legal advisory role on behalf of Oracle/Sun.

The problem for Oracle, however, is that Dal Molin is not representing ITD or participating in this litigation on behalf of ITD. Oracle's requested relief is telling: Oracle seeks a Court order

---

[2] Rule 1.9 of the New Jersey Rules of Professional Conduct invokes a similar duty: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."

providing that "Ms. Dal Molin is disqualified from representing ITD, or having any role or involvement whatsoever in this dispute." The Court finds such relief superfluous and unnecessary where, as here, Dal Molin is already not participating in this litigation. *See Haldane v. Haldane*, 210 Cal. App. 2d 587, 592 (Cal. App. 2d Dist. 1962) (noting that motion to disqualify was moot because attorney in question was not participating in the case) and *Cargill Inc. v. Budine*, 2007 U.S. Dist. LEXIS 48405, *22 (E.D. Cal. June 22, 2007) (disqualification improper where transgression has no substantial and continuing effect on future judicial proceedings); *compare Phelps v. D&S Consultants, Inc.*, 2010 U.S. Dist. LEXIS 81593, *17 (D.N.J. Aug. 10, 2010) (granting motion to disqualify, where law firm sought to continue representing one client despite that representation being substantially related and adverse to its prior representation of another client in the same action). On the record before it, there is simply no reason for the Court to disbelieve Dal Molin's sworn declaration that she is not (and has not) participated in this litigation. *See Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.*, 2009 U.S. Dist. LEXIS 97040, *9 (C.D. Cal. Oct. 5, 2009) (absent credible evidence otherwise, "[t]here no reason to disbelieve [attorney's] factual statements in his declaration"); *compare Cargill*, 2007 U.S. Dist. LEXIS 48405, *33-35 (E.D. Cal. June 22, 2007) (rejecting counsel's self-serving declarations where evidence in the record led to court's concern that confidential information was actually disclosed).

Accordingly, Oracle's motion to disqualify Attorney Vicky Dal Molin is DENIED.

### B. Whether ITD's Outside Counsel, Lowenstein, Must Be Disqualified?

The real target of Oracle's motion to disqualify counsel appears to be ITD's outside counsel, Lowenstein.[3] In its Motion to Disqualify, Oracle argued that Lowenstein should be disqualified because it "must have" worked with Dal Molin based on certain allegedly confidential information relied upon in ITD's Complaint in the New Jersey action. Oracle, however, changes tack in its Reply and instead argues that, even if Lowenstein did not work with Dal Molin, Lowenstein should be disqualified because the ITD Complaint in the New Jersey action cited to

---

[3] ITD is also represented in this litigation by local counsel GCA Law Partners LLP ("GCA Law"). There is no dispute as to GCA Law's representation of ITD.

8

Case No.: 11-cv-01043-LHK
ORDER DENYING MOTION TO DISQUALIFY COUNSEL

confidential and/or privileged documents that were improperly sent to ITD employees by Oracle employees prior to the initiation of this lawsuit.[4]

### 1. Lowenstein's Connection to Dal Molin

There appear to be few cases where courts have imputed confidential knowledge to co-counsel as the basis for disqualification. Indeed, the general rule seems to be the contrary: "disqualification of one firm does not automatically compel disqualification of the firm's co-counsel . . . . Rather, the particular facts of each case must be considered in order to determine whether disqualification is warranted." *See In Re Airport Car Rental Antitrust Litigation*, 470 F. Supp. 495, 501-502 (N.D. Cal. 1979) (citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir. 1977)); *compare Zarco Supply Co. v. Bonnell*, 658 So.2d 151 (Fl. Ct. App. 1995) (disqualifying law firm because of evidence that the two firms had jointly filed the complaint together, the court found it would be "illogical to assume the two firms have not exchanged confidential information."). A review of the particular facts here lead the Court to conclude that disqualification of Lowenstein is not warranted. There is no evidence that Lowenstein worked with Dal Molin in this litigation. Oracle's initial speculation that Dal Molin provided the allegedly confidential information relied upon in the ITD Complaint turned out to be completely unfounded, as it appears that Oracle employees, not Dal Molin, provided the information to ITD employees long before this lawsuit.

In addition, courts are generally reluctant to apply an appearance of impropriety standard absent evidence of attorney misconduct or serious risk that the entire trial may be tainted. *See United States v. Nosal*, 2009 U.S. Dist. LEXIS 14820, *6 (N.D. Cal. Feb. 24, 2009) (noting that the ABA Model Rules eliminated the "appearance of impropriety" approach for disqualification). Dal Molin's recent transfer to HDlogix and presence on behalf of ITD at the March 1, 2010 settlement meeting are troubling in terms of avoiding the appearance of impropriety. Dal Molin did, after all, previously represent Oracle/Sun on substantially similar issues. However, given the general rule that co-counsel should not be automatically disqualified, Dal Molin's transfer and presence at a

---

[4] Oracle does not seek any other sanction except for disqualification of Lowenstein.

pre-litigation settlement meeting are simply insufficient to justify a presumption of disclosure of confidential information to Lowenstein that will taint this entire litigation going forward. *See Cargill*, 2007 U.S. Dist. LEXIS 48405, \*38-39 (considering whether potential association of counsel would have a "continuing adverse effect" detrimental to the litigation).

### 2. Lowenstein's Use of Allegedly Confidential Information

Oracle's alternative argument, made for the first time in its Reply, is that Lowenstein should be disqualified for the separate reason that it relied upon allegedly confidential information in crafting the ITD New Jersey Complaint. This argument fails both because it is made for the first time in Oracle's Reply and because it is not supported by relevant authority. *See Rains v. Flinn (In re Rains)*, 428 F.3d 893, 902 (9th Cir. Cal. 2005) (citing with approval the principle that "issues cannot be raised for the first time in a reply brief").[5]

Under California law:

> When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available *through inadvertence*, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.

*See Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817 (Cal. 2007) (quotations omitted, italics added).[6] On its face, the *Rico* rule applies only to *inadvertent* disclosures of confidential information. That concern is not present here, where the documents were voluntarily sent before litigation began.

---

[5] Oracle represents that it did not know, until ITD filed its Opposition to the Motion to Disqualify, that its own employees (and not Dal Molin) were the source of the information that Lowenstein relied upon in crafting the ITD New Jersey Complaint. *See* Oracle Reply at 12. However, Oracle's ignorance of the actions of its own employees does not justify bringing a motion to disqualify counsel on one basis (e.g., speculation as to the connection between Dal Molin and Lowenstein) and then raising a totally separate basis for disqualification in a reply.

[6] Rule 4.4(b) of the N.J. Rules of Professional Conduct provides a similar rule of conduct, requiring that "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender."

10

Case No.: 11-cv-01043-LHK
ORDER DENYING MOTION TO DISQUALIFY COUNSEL

Courts outside of this Circuit have questioned "why this same duty to disclose should cease where confidential documents are sent intentionally and without permission." *See Chamberlain Group, Inc. v. Lear Corp.*, 270 F.R.D. 392, 398 (N.D. Ill. 2010). On the record before it, however, the Court declines to extend the *Rico* rule to disqualify Lowenstein here, where the allegedly confidential documents at issue were e-mails voluntarily sent by several different Oracle business representatives, not Dal Molin or anonymous sources, to ITD employees prior to the initiation of litigation. As ITD notes, Oracle does not cite "a single case where a law firm was disqualified because it made use of an e-mail in its client's files that was *voluntarily* sent by the defendant to another business person . . . *before* the litigation." *See* Def.'s Sur-reply at 3 (italics in original); *see also Burt Hill, Inc. v. Hassan*, 2010 U.S. Dist. LEXIS 7492 at *16 (W.D. Pa. Jan. 29, 2010) (denying motion to disqualify counsel even where counsel retained documents received from allegedly "anonymous sources" for months during litigation); *compare Arnold v. Cargill Inc.*, 2004 U.S. Dist. LEXIS 19381 at *31 n.7 (D. Minn. Sept. 24, 2004) (recognizing that disqualification m motions should be subject to strict judicial scrutiny, but granting motion to disqualify where counsel violated "several ethical duties," including soliciting information from party on opposing side and contributing to the destruction of documents).

In sum, the Court will not disqualify Lowenstein where it is clear that Oracle's own employees caused the delivery of the documents to ITD employees prior to the initiation of litigation. *See Richards v. Jain*, 168 F. Supp. 2d 1195, 1201 (W.D. Wash. 2001) (finding that an important factor in considering a disqualification motion is whether "the defendants' own conduct or fault caused the delivery of the documents").

11

### IV. Conclusion

For the reasons explained above, Oracle's motion to disqualify counsel [dkt. #38] is DENIED. The July 21, 2011 motion hearing is vacated. The July 21, 2011 case management conference remains as set.

**IT IS SO ORDERED.**

Dated: July 20, 2011

LUCY H. KOH
United States District Judge